IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

STEPHEN E. DISHINGER                                    PETITIONER


V.                          NO: 2:05CV00100 GH


LINDA SANDERS, Warden,
FCI Forrest City, Arkansas                              RESPONDENT


## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge George Howard, Jr.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the

District Judge, you must, at the same time that you file your written objections, include the following:

1.  Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.  The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## DISPOSITION

### I.    BACKGROUND.

On April 28, 2005, Petitioner, who is serving a thirteen-month sentence at FCI, Forrest City, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this Court challenging a new rule of the Federal Bureau of Prisons ("BOP") limiting the duration of confinement in a community correction center ("CCC") to "the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a). The new rule took effect on February 14, 2005. In the petition, Petitioner

alleged that he was scheduled for transfer to a CCC on December 4, 2005, which would permit him only "some thirty (30) days or less of CCC confinement." He alleged that he had requested to be considered for additional CCC placement time, but that the Respondent, citing the February 2005 Rule, denied his request. On August 22, 2005, the Magistrate Judge undersigned found that the February 2005 Rule was invalid and recommended to Judge Howard that Petitioner's habeas corpus petition be granted. On September 15, 2005, Judge Howard, adopting the Magistrate Judge's recommended disposition, entered an order and judgment directing the Respondent, Warden Linda Sanders, to "(a) consider, within twenty days and in good faith, transferring Petitioner to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 Policy[1]; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months."

On October 11, 2005, Petitioner filed a "Motion for Show Cause Order" requesting that this Court order the Respondent to show cause as to why she should not be cited for contempt of court for failing to comply with this Court's order of September 15, 2005. On November 9, 2005, the Court granted Petitioner's Motion for Order to Show Cause and ordered the Respondent, Warden Sanders, to appear for a

---

[1] The December 2002 Policy, like the February 2005 Rule, limited the duration of confinement in a CCC to the last 10% of the prison sentence, not to exceed six months.

show cause hearing and demonstrate why she should not be held in civil contempt.

The show cause hearing was held on November 22, 2005, before the Magistrate Judge

undersigned.

## II.   ANALYSIS.

The evidence received at the show cause hearing demonstrates that on or about

June 17, 2005, prison staff at FCI, Forrest City,  sent an "Institutional Referral for CCC

Placement" and supplemental documentation, including medical information, to Lola

Lee Brown, the BOP's Community Corrections Manager ("CCM") in Dallas, Texas.[2] The

---

[2]  Pursuant to BOP policy, the unit team at the prison generates a CCC
placement recommendation after a program review which is normally held 11 to 13
months before an inmate's probable release date. BOP P.S. 7310.04 ¶ 12; Kelly v.
Nash, 2005 U.S. Dist. LEXIS 24695 at 7 n. 2 (D.N.J. Oct. 18, 2005). According to BOP
policy, the recommendation for CCC placement is to be based on "assessments of [an]
inmate['s] needs for services, public safety, and the necessity of the [BOP] to manage
its inmate population responsibly." BOP P.S. 7310.04 ¶ 9. "A number of factors must be
weighed to determine the length of CCC placement for inmates, including their
individual needs and existing community resources." Id.  In conducting its review, the
unit team considers "the inmate's current offense behavior, institutional adjustment,
prior criminal record and proposed release plans. . . [,] [h]is overall ability to
successfully transition into the community . . ., his medical needs, his ability to find
employment, his financial resources, and family ties." Kelly v. Nash, 2005 U.S. Dist.
LEXIS 24695 at 7 n. 2.  After review, a referral package is completed, which includes
any relevant medical and psychological information, classification materials, and a
recommended CCC placement date or range (such as 60 to 90 days in a CCC). Id.;
BOP P.S. 7310.04 ¶ 12. The referral package is then processed through internal
channels at the prison, which include the Inmate Systems Manager, the Case
Management Coordinator, the Associate Warden of Programs, the Executive Assistant,
and the Warden. Kelly v. Nash, 2005 U.S. Dist. LEXIS 24695 at 7 n. 2.  After review by
the appropriate personnel, the Warden approves or rejects the package. BOP P.S.
7310.04 ¶ 12.  If the Warden approves the package, the official approval is a written
document called an "Institutional Referral for CCC Placement." Kelly v. Nash, 2005 U.S.
Dist. LEXIS 24695 at 7 n. 2; BOP P.S. 7310.04 ¶ 12.  Upon approval, the unit team
forwards the referral package and appropriate attachments to the CCM.  BOP P.S.
7310.04 ¶ 12.  "Upon receiving a completed CCC referral package, the CCM shall
expedite one copy to the appropriate CCC, accompanied by a cover memorandum

referral was signed by Warden Linda Sanders. In the referral, Warden Sanders recommended that Petitioner be released to a CCC in Elk City, Oklahoma, on December 4, 2005. According to the referral, Petitioner's anticipated release date was January 6, 2005. On July 25, 2005, Richard L. Dunkle, the Executive Director of the Oklahoma Halfway House in Oklahoma City, Oklahoma, wrote Karen Hunter, Unit Manager at FCI, Forrest City, and informed her that Petitioner had been accepted for placement at the halfway house with an arrival date of December 6, 2005.

On August 22, 2005, the Magistrate Judge undersigned recommended to Judge Howard that Petitioner's habeas corpus petition be granted. Shortly thereafter, Susan De La Rosa, a BOP Case Manager at FCI, Forrest City, received a copy of the recommended disposition. On August 30, 2005, Ms. De La Rosa sent a e-mail to James Crook, an attorney employed by the BOP at the Consolidated Legal Center in Oklahoma City, Oklahoma, requesting additional CCC placement time for Petitioner. In the e-mail, Ms. De La Rosa noted that Petitioner had received an order from the court system that "we were to consider 'in good faith' additional CCC placement." Ms. De La Rosa suggested a CCC placement date of October 6, 2005. De La Rosa asked Crook to send a copy of the e-mail to Lola Lee Brown at the CCM office in Dallas, Texas. Susan De La Rosa testified at the show cause hearing that she recommended the October 6 date based on "all relevant factors." She further testified that Petitioner's

---

recommending a placement date and listing any special program requirements. The CCM shall indicate a specific placement date based upon known resources." BOP P.S. 7300.09 sec. 5.2.2. CCC staff is required to notify the CCM in writing of acceptance or rejection. BOP P.S. 7310.04 ¶ 12; BOP P.S. 7300.09 § 5.2.2.

history was exactly the same as when he was assigned to halfway houses on two prior occasions.

On September 2, 2005, De La Rosa sent an e-mail to James Crook requesting that the CCM hold off on the request for "a little while" because there was not an actual order entered yet.   On September 6, 2005, De La Rosa was advised that her August 30, 2005, message was being been forwarded to Leonard George, who is a Community Corrections Specialist at the BOP's CCM office in Dallas.   On September 6, 2005, Mr. George sent an e-mail to Ms. De La Rosa requesting an updated medical form for Petitioner.   On September 10, 2005, Ms. De La Rosa sent Mr. George an e-mail requesting that the CCM go ahead and process the request for additional CCC placement time for Petitioner.   On September 12, 2005, Karen Hunter responded to an informal request by Petitioner for additional time in a CCC.   In her response, Hunter stated that Petitioner had been re-evaluated based on the recommendation of the courts and that a request had been made to the CCM's office for additional CCC placement.   Ms. Hunter further stated that Petitioner would be notified when a decision was made.

On September 15, 2005, Judge Howard entered his order directing the Respondent to "(a) consider, within twenty days and in good faith, transferring Petitioner to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 Policy; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a

reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months."

The evidence received at the show cause hearing established that James Crook, an attorney employed by the BOP, implemented a procedure in the summer of 2005 in an effort to comply with court orders such as the one in this case entered by Judge Howard on September 15, 2005.  Pursuant to this procedure, Fletcher Jackson, an Assistant United States Attorney, upon receiving Judge Howard's order, sent the order to Mr. Crook via facsimile.   Mr. Crook then sent a copy of the order via facsimile to Jennifer Patton, who works as a Secretary for Greg Thompson, the Associate Warden at FCI, Forrest City.  Ms. Patton gave a copy of the order to Sterling Dawson, the Inmate Systems Manager at the unit.  Dawson is a paralegal.  Dawson forwarded the order to Susan De La Rosa, a Case Manager at the unit.

Between September 12, 2005, and September 20, 2005, Ms. De La Rosa continued to provide the CCM office with needed documentation related to Petitioner's CCC placement.  On September 20, 2005, Leonard George e-mailed Ms. De La Rosa and stated that he had received a copy of the court's order but was still awaiting a new, updated medical form.  A couple of hours later, Ms. De La Rosa sent Mr. George an updated medical form for Petitioner via facsimile.  On September 21, 2005, Ms. De La Rosa, after contacting Health Services staff regarding Petitioner's medical condition, advised the CCM that she thought that the medical issue had been resolved.

On October 3, 2005, Warden Sanders responded to a request by Petitioner for administrative remedy, dated September 12, 2005, in which Petitioner requested

additional CCC time, stating that prison staff was not taking care of his doctor's appointments or medications. In the request, Petitioner requested 70 to 75 days of additional time in a CCC in Oklahoma City and noted that this Court in 2:05CV00100 had granted his petition for good faith consideration "of more than 10%."  In her response, the Warden stated: "At this time unit staff are not in receipt of an order from the courts indicating that we are to consider additional halfway house placement. Until unit staff have received and verified a court order, additional halfway house placement cannot be reviewed."[3] Accordingly, the Respondent denied Petitioner's request for administrative remedy. The evidence at the hearing revealed that Karen Hunter prepared the Warden's response.

On October 11, 2005, Petitioner filed his "Motion for Show Cause Order" requesting that this Court order the Respondent to show cause as to why she should not be cited for contempt of court for failing to comply with this Court's order of September 15, 2005.  On October 24, 2005, Ms. De La Rosa sent an e-mail to the CCM requesting information regarding the status of the institution's request for additional CCC placement time for Petitioner.  On October 27, 2005, the Respondent responded to Petitioner's Motion for Show Cause Order.  On November 7, 2005, James Crook sent an e-mail to Leonard George at the CCM office in Dallas, Texas, inquiring about the status of the institution's request for additional CCC time for Petitioner. In the e-mail, Crook noted that Petitioner had filed a motion to show cause alleging that "we

---

[3] This statement was obviously incorrect as staff at FCI, Forrest City, had received Judge Howard's September 15, 2005, order prior to the date of the Warden's response.

are failing to comply with the Court's directives." On November 9, 2005, the Court granted Petitioner's Motion for Order to Show Cause.  On November 10, 2005, Leonard George sent a e-mail to James Crook stating that it had been determined that Petitioner did not warrant additional CCC time.   Mr. George stated that this decision was based upon Petitioner's "extensive criminal history . . .[,] evidence of his ability to escape (1996) . . .[,] a propensity to violate his conditions of SRT Term (2002 & 2005 SRT Revoc) . . . [,] concerns with his ability to obtain/maintain employment (requirement of CCC placement) . . .[,] his possession of a significant medical disorder . . . and the fact of his having an established release plan (residence w/wife)."

Civil contempt proceedings are "brought to enforce a court order that requires [a party] to act in some defined manner." Mercer v. Mitchell, 908 F.2d 763, 768 (11th Cir. 1990); Chairs v. Burgess, 143 F.3d 1432, 1436 (11th Cir. 1998).  A party seeking a civil contempt order bears the burden of showing by clear and convincing evidence that the person alleged to be in contempt violated a court order. Chicago Truck Drivers Union Pension Fund v. Brotherhood Labor Leasing, 207 F.3d 500, 504-05 (8th Cir. 2000); Jakes, Ltd., Inc. v. City of Coates, 356 F.3d 896, 899-900 (8th Cir. 2004); Wyatt v. Sawyer, 80 F. Supp. 2d 1275, 1278 (M.D. Ala. 1999).

While the Magistrate Judge is troubled by the rather cavalier attitude exhibited by Warden Linda Sanders at the show cause hearing held on November 22, 2005, the Magistrate Judge finds that the evidence presented at the hearing does not show that Warden Sanders violated Judge Howard's order of September 15, 2005, directing her to consider, within twenty days and in good faith, transferring Petitioner to a CCC for

the last six months of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 Policy.  While Warden Sanders did not personally take any action to comply with Judge Howard's order,[4] Susan De La Rosa, a Case Manager at FCI, Forrest City, recommended that Petitioner be given additional time in a CCC commencing on October 6, 2005, and sent necessary documentation to the CCM relating to Petitioner's CCC placement.   Ms. De La Rosa's actions were consistent with BOP policy and  this Court's order of September 15, 2005. The CCM in Dallas, Texas, after receiving De La Rosa's recommendation, made the determination that Petitioner would not be given additional CCC time.  While the CCM's decision appears to be lacking in good faith, particularly in view of the fact that the CCM cited new factors to deny Petitioner additional CCC time when the CCM never mentioned such factors until after Petitioner filed his motion for order to show cause, the Magistrate Judge finds that this Court cannot hold the CCM or the BOP, who are not parties to this action, in civil contempt for failing to comply with this Court's order as neither the CCM or BOP was alleged by Petitioner in his motion for order to show cause to be in contempt of this Court's September 15, 2005 order, and neither has been given an opportunity, after appropriate notice, to be heard at a  hearing as to why they should not be held in civil contempt.[5]  The show cause hearing was held solely to

---

[4]  In fact, Warden Sanders had in place a system where compliance with court orders was delegated to others without any participation by Sanders.

[5] The Magistrate Judge notes that there is not sufficient time to give the CCM and the BOP notice and an opportunity to be heard at a hearing and then to make a recommendation to Judge Howard prior to December 6, 2005, the date Petitioner is scheduled for release to a CCC.

determine whether Warden Sanders should be held in civil contempt.  While a nonparty may be held in civil contempt where he or she "aids or abets a named party in a concerted violation of a court order," Chicago Truck Drivers Union Pension Fund, 207 F.3d at 507, a person or organization cannot be held in civil contempt without adequate notice of the allegations and an impartial hearing at which the person or organization has an opportunity to present a defense. Fisher v. Marubeni Cotton Corp., 526 F.2d 1338, 1342 (8th Cir. 1975); In re Matter of Grand Jury Subpoena, 739 F.2d 1354, 1357 (8th Cir. 1984); Schoenberg v. Shapolsky Publisher's, Inc., 971 F.2d 926, 934-35 (2d Cir. 1992); Fonar Corp. v. Magnetic Resonance Plus, Inc., 128 F.3d 99, 102 (2d Cir. 1997); Nabkey v. Hoffius, 827 F. Supp. 450, 452 (W.D. Mich. 1993), aff'd, 79 F.3d 1148 (6th Cir. 1996).

## III.     CONCLUSION.

For the foregoing reasons, the Magistrate Judge recommends that Petitioner's request that the Respondent be cited for civil contempt be denied.

THEREFORE, the Magistrate Judge recommends that Petitioner's request that the Respondent be cited for civil contempt be denied.

Dated this 30th day of November, 2005.


_____/s/ John F. Forster, Jr._____
UNITED STATES MAGISTRATE JUDGE